### BOONE v. STONE et al.
#### No. 14102.

Court of Civil Appeals of Texas.
Fort Worth.

June 21, 1940.

Rehearing Denied Sept. 6, 1940.

Kearby Peery, of Wichita Falls, for appellant.

Jos. W. Bailey, Jr., and C. J. Shaeffer, both of Dallas, and McDonald & Anderson, of Wichita Falls, for appellees.

SPEER, Justice.

T. R. Boone, as plaintiff, instituted this suit to have a will construed, naming as defendants, Jerome S. Stone, individually, and as Trustee, Helen Stone Anderson, a widow, and her daughter, Helen Louise Anderson, a minor.

In the amended pleadings, upon which this cause was tried, plaintiff alleged that Jerome S. Stone, an unmarried son, and Helen Stone Anderson, were the only children of J. W. Stone, deceased, and that Helen Louise Anderson was the minor daughter of the said Helen Stone Anderson.

It was alleged that in 1930, J. W. Stone executed what purported to be his last will and testament; he died in 1934, and the will was duly admitted to probate in 1935. The will is set out in the pleadings and, omitting formal parts, it reads:

"Item 2. I give, devise and bequeath, after my death, to Jerome S. Stone, as trustee, upon and for the uses and trusts hereinafter set forth, all of my property, real, personal and mixed, of whatsoever kind and character and wherever situated, and my said trustee, as such, shall have all the powers ordinarily incident to such office, and it shall be his duty to diligently manage said estate for the interests of the beneficiaries herein named, and he shall have power as such trustee, acting as such for said estate, to sell and convey any land, or lands, or to mortgage the same, and to lease the same, and to receive and receipt for, and execute all necessary acquittances, discharges and releases, for any moneys coming into said estate, and no purchaser from him as trustee shall be required to look to the application of the purchase money, and he may and shall expend from time to time proper and reasonable amounts of the income from said estate, and may, in case of necessity, encroach upon the principal of the same for the upkeep, support and maintenance of the beneficiaries hereunder, and he shall keep accurate and just accounts of his doings in this behalf, 'and submit the same to the inspection of the beneficiaries at any reasonable time, and shall preserve all vouchers and other papers relating to said estate.'

"Item 3. That said Jerome S. Stone shall hold said property and estate, however, in trust for my daughter, Helen Stone Anderson, beneficiary, and for the education, maintenance and support of any child or children she may have, for and during her natural life.

"In the event of the death of Helen Stone Anderson, leaving a child or children surviving her, then it is my will that one-half ($\frac{1}{2}$) of the estate then remaining in the hands of the trustee shall go to and become the property of my son, Jerome S. Stone, he surviving Helen Stone Anderson, and the other one-half ($\frac{1}{2}$) to the child or children born of the body of Helen Stone Anderson, and if Helen Stone Anderson shall die before any child or children of herself attains its or their majority, then the trust herein created shall continue as to their half during their minority, and then cease.

"Item 4. If Jerome S. Stone shall not survive Helen Stone Anderson, and shall die without issue, then it is my will and desire that the whole of said estate remaining in the hands of the trustee shall go to and become the property of Helen Stone Anderson.

"Item 5. It is my will, and I do hereby nominate, constitute and appoint my daughter, Helen Stone Anderson, and my son, Jerome S. Stone, as joint executors of this will and of my estate, and the survivor may act as such, and I direct that no bond or security be required of them, or either of them as such. I further direct that no bond or security be required of Jerome S. Stone as trustee, but that in the event the courts shall at any time appoint a trustee, upon any contingency whatever, that such trustee shall be required to give bond in the amount required by law of administrators."

It was further alleged that in 1937, Jerome S. Stone filed a voluntary petition in bankruptcy, in which he declared, under oath, that the accompanying schedules contained a list of all property and interests

therein owned by him. Among other property so listed appears: "A possible contingent interest in the estate of J. W. Stone, deceased, $100." That a trustee was appointed by the Bankruptcy Court for the purpose of receiving and converting into cash the assets of the bankrupt, under orders of the court; that the trustee in bankruptcy duly advertised said assets for sale, as ordered by the court and at said sale plaintiff purchased, for a valuable consideration, certain of said assets, consisting of all of the interest of Jerome S. Stone, the bankrupt, in and to that part of his father's estate in certain real property in the city of Wichita Falls, Texas, and reference is made to the assignment and conveyance thereof by the trustee in bankruptcy.

Allegations were made to the effect that Jerome S. Stone, as trustee in the will, had previously to the date of the institution of the suit, conveyed the property, in disregard of plaintiff's rights and interest, to Helen Stone Anderson, and that she was then asserting the fee title thereto and denying plaintiff's rights so acquired from the trustee in bankruptcy.

It was alleged that the will of J. W. Stone, deceased, was void because it violated the rule against perpetuities; that if not void for that reason, then it was void because it was so uncertain and ambiguous that it was not susceptible to a construction of the testator's intention as to what disposition should be made of a possible contingent remainder existing after the happening, if they should happen, of certain contingencies therein set out, and further; that in any event no disposition or bequest was made in the instrument of the possible contingent remainder of the estate, after the bequests and legacies were satisfied; that such remainder lapsed to the estate of deceased, and was inherited by the son and daughter. Prayer was for a construction of the will and a decree construing the will as alleged and for general and special relief.

Defendants filed pleas in abatement. The substance of the pleas was that since plaintiff's allegations were that he had purchased from the trustee in bankruptcy "a possible contingent interest in the estate of J. W. Stone, deceased", and the contingency upon which he relied was shown not to have happened at the time the suit was instituted, the action was prematurely brought, and asked that the suit abate.

A hearing was had on the pleas in abatement. The trial court sustained the pleas and dismissed plaintiff's suit. This appeal was perfected from that judgment.

There is no controversy about the facts developed upon the trial. They consist in the main of stipulations, certified copies of the probate proceedings, wherein the will of J. W. Stone was admitted to probate, the bankruptcy proceedings in the matter of Jerome S. Stone, bankrupt, and the assignment of conveyance from the trustee in bankruptcy to plaintiff, T. R. Boone.

To avoid repetition, and for the sake of brevity, we shall refer to T. R. Boone as plaintiff, to J. W. Stone as testator, Jerome S. Stone as the son, Helen Stone Anderson as the daughter, and to Helen Louise Anderson as the minor.

The first proposition, among other things, charges that the will of testator was void because it violated the rule against perpetuities, in that the possible remainder estate which could arise because of uncertain contingencies in the will, would not vest in any person then in being nor within 21 years thereafter.

Under Article 1, Section 26, of our State Constitution, Vernon's Ann.St., it is declared that perpetuities are contrary to the genius of a free government and shall never be allowed.

By the terms of the will, testator's estate vested in the son, as trustee for the purposes therein named. The trust was for the support and maintenance of the daughter and the education of her children, during her life. If she should die before the demise of her brother and leave issue of her body, one-half of the property then in the hands of the trustee should vest in the son, and the remaining one-half was devised to such surviving child or children of the daughter, and the trust should continue until the youngest of such child or children reached his majority, at which time the trust should cease.

The will became effective at the death of testator. Obviously the daughter was then living and there was one child, she being the minor defendant here. If another child or children should be born to the daughter at any time in the future, the life of the trust would of necessity be extended until the after-born child or children reached their majority. We are unable to see how the trust could continue longer than 21 years after the life of the daughter.

The well settled rule construing the constitutional provision against perpetuities now seems to be well settled. Our courts recognize the test to be: "Perpetuity is a limitation, taking the subject-matter of the perpetuity out of commerce for a period of time greater than a life or lives in being and 21 years thereafter." If by any possibility a devise violates the above established rule, it cannot stand. Anderson v. Menefee, Tex.Civ.App., 174 S.W. 904, 907, writ refused; Brooker **v.** Brooker, 130 Tex. 27, 106 S.W.2d 247; Clarke v. Clarke, 121 Tex. 165, 46 S.W.2d 658, and other cases of like kind.

In connection with the first proposition, it is further urged that the will violated the rule against perpetuities because there was no provision made for the vesting of title within the life or lives of persons in being and within 21 years thereafter, or for it to vest at any time, upon the happening of certain named contingencies in the will. This contention is based upon those provisions in the will which, (a) give a life estate to the daughter, and (b) if she should predecease the son and leave a child or children surviving her, one-half of the remainder in the trustee's hands should vest in the son and the other one-half to continue in trust for the child or children until they reached their majority, and then the trust should cease. It is urged, and properly so, we think, that if the daughter should predecease the son and leave *no child or children surviving her,* the life estate in her would terminate and there is no provision made, nor saving clause or residuary term found in the will, under which the remainder or reversionary estate would pass.

Much of what we have said regarding the termination of the daughter's life estate, under conditions mentioned, is applicable to Item 4, which pertains to the death of the son. It will be observed that if the son should predecease the daughter, *without issue,* the whole of the estate remaining in the hands of the trustee should go and pass to the daughter. But it must be noted that if the son should predecease the daughter and leave a child or children, no provision is made for the passing of such interest as the son may have had. The possible contingencies mentioned, under which no attempt is made to devise the property, do not infringe the rule against perpetuities, but are lapsed legacies. We shall presently discuss this phase of the will. The contention that the will of testator violated the rule of perpetuities is overruled.

The law prefers to give, to a construction of wills, one that will prevent partial intestacy. It will be presumed that a testator did not intend to die intestate as to any portion of his estate, and this presumption will prevail unless the contrary is clearly expressed or necessarily implied from the language used. 44 Tex.Jur., sect. 148, p. 707; Bittner v. Bittner, Tex.Com. App., 45 S.W.2d 148. The will in controversy was written in 1930, and the testator died four years later. If the language used by him in the instrument was not as he wished it to be, he no doubt would have changed it in that period of time.

To review the will and construe the language used in its most favorable light to be an intention expressed or necessarily implied, that testator did not intend to die intestate as to any part of his property, we are unable to escape the conclusion that whether he had such intention or not, the uncertain contingencies set out therein of necessity will overcome all legal presumptions; we must give effect to the intention of testator as expressed in the will.

Briefly analyzing the will, we find that uppermost in testator's mind was the intention to bestow the objects of his bounty upon his widowed daughter, her child, the minor, and any child or children that should thereafter be born to her, as well also any child or children that should be born to the son. To accomplish this end, a very liberal trust was created, giving to the trustee the power to sell, mortgage, lease and hypothecate the property and to use the proceeds arising from such transactions for the purposes of administering the trust, viz.: "In trust for my daughter, Helen Stone Anderson, beneficiary, and for the education, maintenance and support of any child or children she may have, for and during her natural life." So intent was the testator that his daughter and her children then born or to be born should be amply provided for, he gave power to the trustee to dispose of the corpus of the estate, if necessary, for such purposes. We may assume that testator was less concerned about providing for his son, perhaps for business reasons best known to him. The only provision found in the will by which a conditional bequest was made to the son is found immediately fol-

lowing the last above quoted expression. It reads: "In the event of the death of Helen Stone Anderson, leaving a child or children surviving her, then it is my will that one-half of the estate then remaining in the hands of the trustee shall go to and become the property of my son, Jerome S. Stone, he surviving Helen Stone Anderson * * *." The will continues by bequeathing to the child or children which the daughter left surviving her, the other one-half of the estate, and that the trust thereon continued until such child or children should reach their majority and then cease.

By Item 4 of the will, it was provided that if the son should predecease the daughter, "and shall die without issue", then and in that event the whole of the estate should vest in the daughter. If this contingency should happen the life estate previously created in the daughter was to be enlarged to an estate in fee, and is not repugnant to former provisions creating the life estate. It may be added, however, that it is difficult for us to see what, if any, interest the son may have had in the estate, could vest in the daughter if the contingency mentioned should arise, unless it could be said that the testator knew there was a possible contingent remainder or interest that may revert to his estate and eventually be inherited by the son or his descendants (if any) after all legacies had been satisfied. However, it was only in the event that the son should predecease the daughter without issue, that the whole estate should pass to the daughter. If the son should predecease his sister and leave issue, no disposition was made of the remainder of the estate. Likewise, if the minor should predecease her mother and there was no other child or children born to testator's daughter, her life estate would terminate and the will is silent as to what disposition would be made of the remainder. This being true, the whole remainder, be it much or little, would be a lapsed estate of the testator and would pass by descent and distribution to the son. The will was not void because of such a situation, nor would it fall within the rule against perpetuities on that account, as we have above indicated. The principle involved here, which produces lapsed legacies, is well recognized by our courts. Such an estate vests immediately in the heirs of the testator. Article 3314, R.C.S.; Munger v. Munger, Tex.Civ.App., 298 S.W. 470,

writ refused. If, by the plain and unambiguous language used, a portion of a testator's estate is not devised and there is no language used in the instrument from which it can reasonably be inferred that he intended to devise that residuary interest, it will lapse and revert to the estate of the testator. Hagood v. Hagood, Tex.Civ. App., 186 S.W. 220, writ refused; Bittner v. Bittner, Tex.Com.App., 45 S.W.2d 148; Simpson v. United Production Corp., Tex. Civ.App., 128 S.W.2d 99. Propositions one and five raise the point last above discussed, and insofar as it is contended that there was a possible lapsed estate not disposed of by the will, and that it was inherited by the son and daughter, they are sustained.

By propositions two, five and eight, it is contended that plaintiff having acquired from the trustee in bankruptcy, by a bona fide purchase thereof, all of the possible contingent interest of the son in testator's estate, he was, under the pleadings and evidence, entitled to maintain this suit, and that it was reversible error for the trial court to sustain pleas in abatement and dismiss his suit.

We have concluded that, under the undisputed facts developed in this case, the propositions are well taken. We shall demonstrate why we have reached this conclusion.

Under the terms of the will, we have seen that if certain things should in the future happen, there would be a substantial interest in the estate of testator remaining undisposed of. Under Article 3314, R.C.S., and Munger v. Munger, supra, that estate lapsed and was reinvested in that of testator upon the happening of those contingencies. Affirmatively stated, if the daughter should predecease the son, leaving no issue of her body, or if the son (having taken a devise) under the will should predecease the daughter, leaving issue, no disposition is made of the property. These are possibilities and either or both of them may happen; nor is it certain that the estate will have been absorbed at that time by a satisfaction of the estates created by the testamentary document.

In 1937, Jerome S. Stone was adjudicated a voluntary bankrupt, and the schedules required by law were filed by him, in which it was disclosed that he had assets of a possible contingent interest in the estate of J. W. Stone, deceased. To the extent stated, the son recognized that a possible

942

interest in the estate would lapse and revert to his father's estate. All of the bankrupt's property, of every kind and character, vested then and there in the trustee in bankruptcy. Sections 110 and 75, 11 U.S.C.A. The proceedings in bankruptcy are disclosed in the statement of facts and are in no way assailed by either party to this suit, and no useful purpose would be served to discuss them in detail. Under order of the bankruptcy court, the trustee was instructed to sell at public out-cry all property of Jerome S. Stone. This was done and plaintiff became the purchaser, in good faith, for a cash consideration of $200 paid to the trustee. A conveyance, termed an assignment in the record, was made to plaintiff by the trustee. The assignment recited that for the consideration paid, the trustee conveyed, "All my (the trustee's) right, title and interest in and to a possible contingent interest in the estate of J. W. Stone, deceased, belonging to the estate of Jerome S. Stone, bankrupt, wherever situated." The sale and conveyance were confirmed by the court, and it being made to appear that there were no other assets to be disposed of, the trustee in bankruptcy was, by the court, discharged.

It was stipulated substantially, that certain property situated in the City of Wichita Falls, Texas (in which plaintiff claims an interest), was at the time the will was drawn and at the death of J. W. Stone, his homestead, and that Helen Stone Anderson, a widowed daughter, and her minor daughter, lived with J. W. Stone in the home, and were living there at the time of the trial. In short, at the time of the trial, the son, the daughter and the minor were all living; that since the probate of the will, the property had been conveyed to Helen Stone Anderson.

The pleadings of plaintiff admitted that the property had been conveyed to Helen Stone Anderson, and that she was asserting the fee simple title thereto, in disregard of the rights and interest of plaintiff. Insofar as was necessary for defendants to discharge their burden in the pleas in abatement, no proof was necessary to establish the rights of Helen Stone Anderson, insofar as they were conferred by the deed to her.

This brings us to consider whether or not plaintiff's suit for construction of the will was prematurely brought. If this had been an action by plaintiff for a recovery of title and possession of an interest in the property, we think the pleas would have been well taken. But such is not the case before us. Plaintiff may never receive anything as a result of his purchase, while upon the other hand, he may, depending upon uncertain contingencies made to appear in the will.

It will be observed that testator provided a trust in the son for the management of the property, and the scheme or plan thus provided was perhaps based upon the theory that the son was better equipped to thus discharge the trust and by the means provided, support and maintain the daughter during her lifetime. There is no provision in the will from which it may be inferred that testator ever intended for the daughter to be vested with a fee simple title to the estate so long as the son lived and could perform the trust created. Yet, as shown above, this is what was attempted to be done. If the fee simple title passed to the daughter under the conveyance since the will was probated and the trust began functioning, then a scheme was devised, by which the son, who was executor and trustee, could reap a profit to himself. The conveyance to the daughter had the effect to destroy the trust created by the testator in that property, insofar as the daughter's life estate therein was concerned, and the remainder interest of any child or children that may survive her. Again, if after acquiring a fee simple title, as was attempted in the conveyance, the daughter should predecease the son without issue, the son would inherit from his sister the whole estate. He could not thus promote his own personal interest, nor defeat the trust reposed in him by testator. Loewenstein v. Watts, Tex.Civ.App., 119 S.W.2d 176, reversed by Supreme Court on other grounds, Loewenstein v. United States, 134 Tex. 660, 137 S.W.2d 2, 128 A.L.R. 910.

It is not contended by plaintiff that he is entitled to possession of any part of the estate and thus defeat the estates created by the will, but only that the will be construed in such way as to establish and fix such interest as he has. It is true that the contingencies have not as yet happened that would entitle plaintiff to a definite interest; yet, to deny plaintiff at this time a right to assert his "possible contingent interest" so purchased by him, and require him to delay having that interest declared while the statute of limitations would perhaps ripen Helen Stone Anderson's title into a perfect one by prescription, would be to deny plaintiff of an

equitable relief in the protection of such property right as he may have in the estate. See Clark v. Cattron, 23 Tex.Civ.App. 51, 56 S.W. 99, writ refused. In the case last cited, it was held that where a tenant for life, under will, claims title in fee, a remainder-man may maintain a suit to construe the will and fix the status of the title, but that such an action, if successful, would not give the right of present possession, nor was it necessary to allege that right in order to establish the remainder-man's equities. The court cites in support of the holding: Tevis' Heirs v. Armstrong, 71 Tex. 59, 62, 9 S.W. 134; Day Land & Cattle Co. v. State, 68 Tex. 526, 4 S.W. 865; Rains v. Wheeler, 76 Tex. 390, 13 S.W. 324. It is said by the text writer in 21 C.J., p. 967, that the equitable rights, in such circumstances mentioned, will be allowed to either a vested or contingent remainder-man. See, also, 16 Cyc. p. 643; Kollock v. Webb, 113 Ga. 762, 39 S.E. 339. Insofar as propositions 2, 5 and 8, and the assignments upon which they are based, raise the point that the court erred in sustaining the pleas in abatement because the suit was prematurely brought, they are sustained.

There are other propositions brought forward by plaintiff, which we think unnecessary to pass upon, since they are dependent upon a determination by us of those questions hereinabove discussed. The record before us discloses that there are other questions that will be involved when the court shall hear the case on its merits, and for that reason we have refrained from approaching those matters in a discussion of the action of the trial court in sustaining the pleas in abatement and dismissing plaintiff's suit.

For the reasons shown, the court should have overruled the pleas and heard the case on the merits, as pleaded by all parties. Reversible error was committed when the right of the contested issues was denied to plaintiff. The judgment of the trial court is therefore reversed and the cause remanded for further proceedings conforming with these conclusions. Reversed and remanded.